**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KAITLIN MURROW, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 23-cv-14893 |
| v. | ) ) | Judge Sharon Johnson Coleman |
| QUINCY BIOSCIENCE HOLDING COMPANY, INC., a corporation; QUINCY BIOSCIENCE, LLC, a limited liability company; PREVAGEN, INC., a corporation d/b/a SUGAR RIVER SUPPLEMENTS; QUINCY BIOSCIENCE MANUFACTURING, LLC, a limited liability company; and MARK UNDERWOOD, individually and as an officer of QUINCY BIOSCIENCE HOLDING COMPANY, INC., QUINCY BIOSCIENCE, LLC, and PREVAGEN, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kaitlin Murrow, on behalf of herself and all others similarly situated, alleges that

Defendants Quincy Bioscience Holding Company, Inc.; Quincy Bioscience, LLC; Prevagen, Inc.;

Quincy Bioscience Manufacturing, LLC (collectively, "Quincy"); and Mark Underwood have violated

the Illinois Consumer Fraud Act ("ICFA") by deceptively claiming that Quincy's product Prevagen

improves memory and brain function. Before the Court today is Defendants' motion to dismiss Ms.

Murrow's amended complaint for lack of standing, failure to state a claim, and for lack of personal

jurisdiction over Mr. Underwood. The Court grants the motion in part and denies the motion in part.

Ms. Murrow has not established that any commercials or internet advertisements induced her to

purchase Prevagen, and so may neither bring a claim nor represent a class on that basis. Ms. Murrow

also has not established that Mr. Underwood is personally subject to the jurisdiction of this Court,

and so he will be dismissed as a defendant. However, Ms. Murrow has sufficiently stated a claim that Quincy violated the ICFA with respect to Prevagen's labeling; accordingly, those claims may proceed.

## BACKGROUND

**Factual Allegations**

This is the Court's second adjudication of a motion to dismiss Ms. Murrow's claims. *See Murrow v. Quincy Bioscience Holding Co., Inc., et al.*, No. 23-CV-14893, 2025 WL 446149 (N.D. Ill. Feb. 10, 2025) (Coleman, J.) [hereinafter *Murrow I*]. The Court will therefore assume familiarity with the background of the case; additional details may be found in the previous opinion. *See id.* at *1–2. The following facts are drawn from Ms. Murrow's amended complaint and are assumed true for the purpose of deciding this motion.

Quincy manufactures, distribute, markets, and sells a health supplement called Prevagen. It advertises that Prevagen "improves memory" and "supports healthy brain function, sharper mind, and clearer thinking." The sole active ingredient in Prevagen is apoaequorin, a synthetically produced protein that can also be found in jellyfish. Prior to 2025 or so, Prevagen's label claimed that the product was clinically tested and had been shown to improve cognitive functions in a double-blind study known as the Madison Memory Study ("the Study").

In 2017, the Federal Trade Commission sued Quincy for false advertising and unfair or deceptive acts. At trial, a jury found that eight claims used by Quincy to advertise Prevagen were deceptive, although only two statements were materially deceptive. The district judge then permanently enjoined Quincy from using any of the challenged claims in its marketing materials.[1] *Fed. Trade Comm'n v. Quincy Bioscience Holding Co., Inc.*, No. 17 CIV. 124 (LLS), 2024 WL 6969873 (S.D.N.Y.

---

[1] Quincy's appeal to the Second Circuit is currently pending. *See Federal Trade Commission v. Quincy Bioscience Holding Company, Inc.*, No. 25-12 (2d Cir. Jan 03, 2025)

Nov. 18, 2024). After the injunction, Quincy modified Prevagen's label and its advertising[2] to omit the enjoined claims. The label now reads "Prevagen – For Your Brain," and it also still states that the supplement has been "tested," although it no longer claims to be "clinically tested."

Ms. Murrow, a resident of Chicago, Illinois, learned of Prevagen in or around January 2023 when she saw a bottle of the supplement that her mother had purchased. Ms. Murrow, enticed by the label's claims of improved cognition, purchased a bottle of regular-strength Prevagen and a bottle of extra-strength Prevagen. The supplements, which together cost about $80, had no effect. Ms. Murrow contends that Defendants' labeling and advertising is deceptive because there is no scientific process by which an oral ingestion of apoaequorin could produce the claimed cognitive effects. She also claims that the Study was methodologically flawed, so much so that any representation that the Study demonstrates Prevagen's effectiveness is inherently deceptive.

**Procedural History**

Ms. Murrow filed her initial complaint on October 10, 2023. Dkt. 1. At that time the named Defendants included all parties to the instant motion, as well as Michael Beaman, the CEO of Quincy Bioscience. Defendants moved to dismiss that complaint for failure to state a claim and for lack of personal jurisdiction over Mr. Underwood and Mr. Beaman. Dkt. 38. The Court granted Defendants' motion. It found that, although Ms. Murrow adequately pled that the statements on Prevagen's label constituted a deceptive act that Defendants intended for consumers to rely upon, she had not pled particularized wrongdoing against each Defendant, and thus had failed to state a claim under the heightened pleading standard required by Rule 9(b). *Murrow I* at *5. The Court also found that Ms. Murrow had failed to show that she was injured by Quincy's commercials and internet advertising, because she had not alleged with particularity that she had viewed that advertising prior to purchasing

---

[2] For clarity, the Court's use of "advertising" in this opinion refers to television commercials, internet adverts, and the like. It does not encompass Prevagen's product label.

Prevagen. *Id.* at \*4. Finally, the Court found that personal jurisdiction over Mr. Underwood and Mr. Beaman had not been established because Ms. Murrow had not alleged that either Defendant took any relevant action directed specifically at the state of Illinois. *Id.* at \*6–7. The Court therefore dismissed Ms. Murrow's complaint, without prejudice.

On February 27, 2025, Ms. Murrow timely filed an amended complaint. Dkt. 72 [hereinafter "Am. Compl."]. The significantly expanded amended complaint dropped Mr. Beaman as a defendant, leaving only Mr. Underwood and the corporate Defendants making up Quincy. Ms. Murrow also expanded her allegations to accuse Defendants of continuing to make deceptive statements in the new labeling and advertising produced after the injunction in the FTC case. (In general, Ms. Murrow divides her claims into those relating to "pre-injunction" representations and "post-injunction" representations.) On April 14, 2026, Defendants filed the instant motion to dismiss Ms. Murrow's amended complaint. Dkt. 76; *see also* dkt. 77 [hereinafter Mot. Br.]. Ms. Murrow and Defendants timely filed their respective response and reply briefs, at which point this Court took the motion under advisement.

## LEGAL STANDARD

Pursuant to Rule 12(b)(1), a court must dismiss any action for which it lacks subject matter jurisdiction. Article III of the Constitution limits the federal courts to adjudicating actual "cases" or "controversies." U.S. Const. art. III, § 2, cl. 1. "There is no case or controversy if the plaintiff lacks standing to challenge the defendant's alleged misconduct." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 587 (7th Cir. 2016). To establish Article III standing, a plaintiff must allege: (1) an injury in fact; (2) that is fairly traceable to the defendant's actions; and (3) that is likely to be redressed by a favorable decision from the Court. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The party invoking jurisdiction bears the burden of

– 4 –

establishing the elements necessary for subject matter jurisdiction. *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017).

A motion to dismiss under Rule 12 (b)(2) tests whether a federal court has personal jurisdiction over a defendant. *Curry v. Revolution Lab'ys, LLC,* 949 F.3d 385, 392 (7th Cir. 2020). There are two types of personal jurisdiction—general and specific—but only specific personal jurisdiction is at issue here. Specific jurisdiction is established through satisfaction of three essential requirements: (1) the defendant must have purposefully availed itself of the privilege of conducting activities in the forum state; (2) the alleged injury must arise from or relate to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with the traditional notions of fair play and substantial justice. *See Lexington Ins. Co. v. Hotai Ins. Co., Ltd.,* 938 F.3d 874, 878 (7th Cir. 2019). Although the plaintiff bears the burden of establishing personal jurisdiction, when ruling on a Rule 12(b)(2) motion to dismiss based on the submission of written materials, a plaintiff need only make a prima facie showing of personal jurisdiction. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019).

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under the heightened pleading standard of Rule 9(b), a party alleging fraud must "state with particularity the circumstances constituting fraud." This "ordinarily requires the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted).

For all Rule 12(b) motions, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (12(b)(6)); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019) (12(b)(6)); *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003) (12(b)(1)); *Curry*, 949 F.3d at 393 (12(b)(2)).

## DISCUSSION

### I. Group Pleading

In its prior order, this Court found that Ms. Murrow had failed to meet the requirements of Rule 9(b) in part because she improperly grouped the Defendants together in her allegations. *Murrow I* at \*3. As such, the original complaint did not sufficiently "inform each defendant of the nature of [their] alleged participation in the fraud." *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.,* 20 F.3d 771, 778 (7th Cir. 1994). Defendants argue that Ms. Murrow's amended complaint fails to cure the problem. In place of the original complaint's problematic allegations of wrongdoing by "Defendants," the amended complaint often uses the formulation "Defendant Underwood and the Quincy Corporate Defendants" (or similar). *Compare, e.g.,* dkt. 1 ¶ 10, *with* Am. Compl. ¶ 39. Quincy and Mr. Underwood claim this is a change of pure semantics that "fails to offer any meaningful distinction between the four Corporate Defendants and the single individual Defendant." Mot. Br. \*7.

However, the Court disagrees. First, Defendants mischaracterize the amended complaint by implying that Ms. Murrow did nothing other than a simple find-and-replace of "Defendants" for "Defendant Underwood and the Quincy Corporate Defendants." In fact, the amended complaint features detailed allegations about the specific actions of Mr. Underwood, *see, e.g.,* Am. Compl. ¶¶ 40–55, and it contains copious allegations of Quincy's corporate wrongdoing. Second, as Ms. Murrow points out, in a situation where all corporate Defendants are part of the same corporate structure, she is not required to plead with particularity which *corporate* Defendant did what. Dkt. 78 at 4. As other courts in this district and across the country have held, it is sufficient under Rule 9(b) to plead

allegations with particularity with respect to a parent corporation and its subsidiaries together; a plaintiff need not allege with particularity what each subsidiary has done individually. *BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837, 853 (N.D. Ill. 2021) (Kendall, J.); *see also U.S. ex rel. Strauser v. LaFrance Holdings, Inc.*, No. 18-cv-673, 2019 WL 1086363, at *15–16 (N.D. Okla. Mar. 7, 2019); *United States v. Supervalu, Inc.*, 218 F. Supp. 3d 767, 772 (C.D. Ill. 2016). Defendants do not address this argument in their reply brief. *See* dkt. 79 at *3–4 [hereinafter "Def. Reply"].

Here, Ms. Murrow alleges that Defendants Quincy Bioscience, LLC; Prevagen, Inc.; and Quincy Bioscience Manufacturing, LLC are all wholly owned subsidiaries of Defendant Quincy Bioscience Holding Company, Inc. Am. Compl. ¶¶ 197–99. She also alleges that all four corporate Defendants "have operated as a common enterprise while engaging in the deceptive acts and practices alleged." *Id.* ¶ 202. Defendants offer no argument that any of the corporate Defendants should be thought of as independent actors, and Defendants' practice (which this Court has adopted) of referring to all corporate Defendants collectively simply as "Quincy" rather undercuts any suggestion to the contrary. Mot. Br. *1; Def. Reply *1. Accordingly, the Court finds that, for the purpose of satisfying Rule 9(b), Ms. Murrow need only allege with particularity what "Quincy" has done, not what each corporate Defendant has done.

In this light, and given that the amended complaint now features only one individual Defendant (Mr. Underwood), the seemingly-minor difference between the original complaint's use of "Defendants" and the amended complaint's use of "Defendant Underwood and the Quincy corporate defendants" (or similar constructions) becomes legally quite significant. Previously, it was not possible to tell which allegations pertained to each of the three "Defendant units" (*i.e.*, Mr. Underwood, Mr. Beaman, and Quincy). Now, however, the amended complaint provides appropriate clarity as to which allegations refer to Mr. Underwood, which refer to Quincy, and which refer to both. The Court

– 7 –

therefore finds that the amended complaint has cured the problem of group pleading that plagued the initial complaint.

## II. Illinois Consumer Fraud Act Claims

As in her initial complaint, Ms. Murrow's amended complaint contains only a single count against Defendants: violation of the Illinois Consumer Fraud Act ("IFCA"), 815 ILCS 502/1 *et seq.* Stating a claim under the IFCA requires a plaintiff to allege four elements: (1) a deceptive act or practice; (2) an intent for the consumer to rely on the deception; (3) the occurrence of the deception during conduct involving trade or commerce; and (4) actual damage that was proximately caused by the deception. *See Davis v. G.N. Mortg. Corp.,* 396 F.3d 869, 883 (7th Cir. 2005). Deception under the ICFA is circularly defined as a "statement [that] creates a likelihood of deception or has the capacity to deceive." *People ex. rel Hartigan v. Knecht Servs., Inc.,* 216 Ill.App.3d 843, 857 (Ill. App. 1991); *see also Bober v. Glaxo Wellcome Plc.,* 246 F.3d 934, 938 (7th Cir. 2001). A reasonable consumer standard is used to determine if deception has occurred. *Beardsall v. CVS Pharmacy, Inc.,* 953 F.3d 969, 972 (7th Cir. 2020). This standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell v. Publix Super Markets, Inc.,* 982 F.3d 468, 474-75 (7th Cir. 2020) (internal citations omitted). Courts must view the alleged false statements or omissions in the context of all the information available to the plaintiff. *Benson v. Fannie May Confections Brands, Inc.,* 944 F.3d 639, 646 (7th Cir. 2019). In alleging deception under ICFA, a plaintiff must satisfy the Rule 9(b) heightened pleading standard by stating the circumstances of the alleged wrongdoing "with particularity." *Camasta,* 761 F.3d at 736.

As noted above, Ms. Murrow divides Defendants' alleged deceptive practices into those conducted before the Southern District of New York's injunction and those conducted afterward. The Court will address each in turn.

*A.   Pre-Injunction Claims*

Defendants' primary argument that Ms. Murrow has failed to state a claim with respect to her pre-injunction claims relates to her supposed use of group pleading. However, as discussed above, the Court finds that the amended complaint has cured the issue of group pleading. As a backup position, Defendants resort to the Court's previous finding that "Plaintiff fails to adequately plead a deceptive act, intent that the consumer rely on the deception, and proximate cause to support her ICFA claim." *Murrow I* at *3. They argue, without elaboration, that Ms. Murrow's amended complaint also fails to meet those elements.[3] The Court disagrees.

As an initial matter, Defendants' citation to the Court's previous opinion lacks context. Although the Court did find that Ms. Murrow had failed to sufficiently allege three of four IFCA elements, the primary reason was that her use of group pleading meant that her allegations could not survive Rule 9(b)'s heightened pleading standard. *See id.* at *5. Thus, the Court also found that, with respect to Quincy's use of the Study in its labeling, Ms. Murrow had alleged a deceptive act, an intention for consumers to rely on that deception, and proximate causation at a level of detail sufficient to "generally meet" the IFCA's requirements. *Id.* at *4, 5. Nothing in the amended complaint disturbs these findings with respect to Quincy's Pre-Injunction labeling, and with the resolution of the group pleading problem, Ms. Murrow's complaint now successfully alleges an IFCA claim.

In the original complaint, it was also unclear whether Ms. Murrow's "Body Chemistry Allegations" (*i.e.* her claim that, biologically, Prevagen cannot work as advertised) constituted an independent IFCA claim, in addition to her "Clinical Evidence Allegations" (*i.e.* her claim that the label misrepresented the results of the Study). *See id.* at *1–2. The Court treated the claims as separate and found that (except for her use of group pleading) Ms. Murrow had adequately pled a deceptive

---

[3] Defendants do not contest whether Ms. Murrow has established that the alleged deception occurred during conduct involving trade or commerce.

act and proximate causation, but not intent for customers to rely on the deception. *Id.* at \*4. However, in subsequent filings, Ms. Murrow has clarified that her Body Chemistry Allegations do not constitute a separate IFCA claim. Instead, the Body Chemistry Allegations constitute evidence for why Quincy's "brain health representations" were deceptive. Dkt. 78 at \*3 [hereinafter Pl. Resp.]; *see* Am. Compl. ¶¶ 11, 96–97, 216. In other words, Ms. Murrow's allegations that Prevagen, as a matter of biology, cannot provide the claimed benefit *supplement* her allegations that Quincy deceptively misrepresented the Study. Taken as such, the Body Chemistry Allegation and Clinical Evidence Allegations provide ample evidence, alleged with sufficient particularity, that Quincy committed deceptive acts in its pre-injunction labeling of Prevagen. And, as noted above, the amended complaint's allegations of intent and proximate causation remain sufficient to survive an MTD.

In addition to her claims of pre-injunction deceptive labeling, Ms. Murrow also alleges that Defendants violated the IFCA through deceptive pre-injunction internet and television advertising. The Court previously dismissed such claims because Ms. Murrow did not allege, with particularity, that such advertising induced her to purchase Prevagen; she therefore failed to plead the proximate causation element of an IFCA claim. *Murrow I* at \*4. Defendants argue that Ms. Murrow's amended complaint still fails to allege that any advertising (besides the product label) induced her to purchase the product. Mot. Br. \*8–9. The Court agrees, and Ms. Murrow does not argue otherwise in her response brief. *See* Pl. Resp. \*8. Instead, she argues that such claims are advanced in support of her class claims "on behalf of those who saw Defendants' television ads or website." *Id.* But that puts the cart before the horse. Ms. Murrow cannot represent a class for a claim that she cannot bring herself. *Chambers v. Am. Trans Air, Inc.*, 17 F.3d 998, 1006 (7th Cir. 1994). At a minimum, Ms. Murrow cannot prove proximate causation with respect to Defendants' pre-injunction advertising on the basis of her amended complaint. Her allegations of IFCA violations contained in such advertising thus necessarily fails, and she cannot represent a class on the basis of such claims.

The Court reaffirms its previous findings in the context of Ms. Murrow's positive resolution of the group pleading problem. With respect to her claims of pre-injunction deceptive labeling, Ms. Murrow has now alleged all four elements of an IFCA claim with sufficient particularity to satisfy both Rule 9(b) and Rule 12(b)(6). Her claims of pre-injunction deceptive advertising still fail to allege proximate causation and must therefore be dismissed.

### B. Post-Injunction Claims

Ms. Murrow's amended complaint seeks to significantly enlarge Defendants' potential liability by including new allegations of continued deceptive practices even after the injunction entered by the Southern District of New York. *See, e.g.,* Am. Compl. ¶¶ 10, 81, 185, 216. Ms. Murrow admits that she did not buy any Prevagen products since Defendants changed their advertising and labeling in response to the injunction. Am. Compl. ¶ 195; *see* Pl. Resp. *10. Defendants argue that Ms. Murrow therefore cannot claim to have been injured by any deceptive statements that may have been present in Prevagen's post-injunction advertising and labeling. Mot. Br. *11–12. Accordingly, Defendants contend, Ms. Murrow lacks standing to pursue such claims. *Id.*; *cf. Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (a plaintiff without an injury-in-fact lacks standing under Article III).

Ms. Murrow responds that her allegations of post-injunction misconduct are included in the amended complaint to establish that she can adequately represent other purchasers of Prevagen in a future class. Pl. Resp. *10. As noted above, a named plaintiff cannot represent a class for a claim that she cannot bring herself. *Chambers*, 17 F.3d at 1006. That analysis applies to standing just as much as it does to the sufficiency of a plaintiff's pleading. *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1069 (7th Cir. 2020). However, as Ms. Murrow accurately points out, a large and growing majority of courts in this district and across the country have held that a named plaintiff may adequately represent a class even for products that she did not personally purchase so long as the injuries are "substantially

similar." *See Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 699 (N.D. Ill. 2020) (Seeger, J.) (collecting cases); *see also* 1 *McLaughlin on Class Actions* § 4:28 (13th ed. 2016).

Ms. Murrow alleges that Defendants continued to violate the IFCA in their post-injunction advertising and labeling. But, as noted above, Ms. Murrow has failed to adequately plead that Defendants violated the IFCA in their *pre*-injunction advertising. As such, she cannot adequately represent potential class members whose injuries stem only from Prevagen's advertising, whether pre- or post-injunction. Accordingly, those claims must be dismissed. However, it is possible that Ms. Murrow would be an adequate representative for potential class members whose injuries stem, at least in part, from Prevagen's post-injunction labeling. And, as this Court has previously held in a somewhat similar context, such a determination "is better addressed at the class certification stage of a case [than] in a motion to dismiss." *Biczo v. Ferrara Candy Co.*, No. 22-CV-01967, 2023 WL 2572384, at *4 (N.D. Ill. Mar. 20, 2023) (Coleman, J.). Accordingly, the Court will not dismiss at this time any claims related to Prevagen's post-injunction labeling.

### III.     Personal Jurisdiction over Mr. Underwood

Ms. Murrow's original complaint failed to establish personal jurisdiction over Mr. Underwood and then-Defendant Mr. Beaman. *Murrow I* at *6. Defendants argue that nothing in the Amended Complaint resolves the jurisdictional issue with respect to Mr. Underwood. Specifically, they contend that Ms. Murrow has still failed to allege that Mr. Underwood engaged in any conduct targeting the state of Illinois that relates to her alleged injuries. Mot. Br. *13–15. Although Ms. Murrow's complaint adds many details concerning Mr. Underwood's activities at Quincy, *see* Am. Compl. ¶¶ 12–31, 200–03, Defendants argue that these allegations only show *nationwide* actions, not actions targeted at Illinois, Mot. Br. at *14. The Court agrees.

Ms. Murrow argues that she has established personal jurisdiction over Mr. Underwood through the "stream of commerce" theory, which the Seventh Circuit has adopted. Pl. Resp. *13

(citing *B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 861 (7th Cir. 2024)). But as Defendants point out, the "stream of commerce" theory is a theory of *corporate* personal jurisdiction. Def. Reply *12. As the Supreme Court put it, a state "does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction *over a corporation* that delivers its products into the stream of commerce[.]" *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980) (emphasis added). Although the details of the theory have been subject to much debate, *see, e.g., J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011), this Court is unaware of any holding, by any federal court, suggesting that the stream of commerce theory can establish personal jurisdiction over a natural person—and Ms. Murrow has not identified any such precedent. The Court therefore finds that the stream of commerce theory cannot establish that Mr. Underwood personally availed himself of the benefits of the State of Illinois so as to establish this Court's jurisdiction over his person.

Ms. Murrow also argues that this Court has personal jurisdiction over Mr. Underwood owing to his role in directing the nationwide advertising campaign. Pl. Resp. *13–14. Taking all her allegations as true, and drawing all reasonable inferences in her favor, this claim might suffice to establish personal jurisdiction over Mr. Underwood with respect to any harm inflicted on Ms. Murrow by advertisements that induced her to buy Prevagen. However, as established above, Ms. Murrow has failed to allege that Prevagen advertisements injured her at any point. She therefore has no standing to bring the only claims against Mr. Underwood over which this Court might conceivably have personal jurisdiction. Accordingly, the Court dismisses Mr. Underwood as a defendant.

## CONCLUSION

Defendants' motion to dismiss [76] is granted in part and denied in part. The Court dismisses Mr. Underwood as a defendant and also dismisses all claims related to Prevagen's commercials and internet advertising. All claims related to Prevagen's labeling may proceed.

– 14 –

**IT IS SO ORDERED.**

Date: 5/5/2026

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge